E. MARTIN ESTRADA
United States Attorney
CAMERON L. SCHROEDER/MACK E. JENKINS
Assistant United States Attorney
Chiefs, National Security and Criminal Divisions
LISA LINDHORST (Cal. Bar No. 305399)
COLIN SCOTT (Cal. Bar. 318555.)
Assistant United States Attorneys
Terrorism and Export/General Crimes Sections
     1200 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-6772/3159
     Facsimile: (213) 894-0141
     E-mail:    Lisa.Lindhorst@usdoj.gov
                Colin.Scott@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. 5:23-CR-161-SPG |
|---|---|
| Plaintiff, | GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION TO DISMISS; DECLARATION OF LISA J. LINDHORST; EXHIBITS A-B |
| v. | |
| SIMRHANDEEP SINGH, | |
| Defendant. | Trial Date:  September 16, 2024<br>Location:    Courtroom of the Hon. Sherilyn Peace Garnett |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California, Assistant United States Attorneys Lisa Lindhorst and Colin Scott, hereby files its Opposition to Defendant's Motion to Dismiss.

//

     This Opposition is based upon the attached memorandum of points and authorities, the declaration and accompanying exhibits, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: August 15, 2024       Respectfully submitted,

                                   E. MARTIN ESTRADA
                                   United States Attorney

                                   MACK E. JENKINS
                                   Assistant United States Attorney
                                   Chief, Criminal Division

                                   /s/
                                   LISA LINDHORST
                                   COLIN SCOTT
                                   Assistant United States Attorney

                                   Attorneys for Plaintiff
                                   UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.  INTRODUCTION**

Defendant Simrhandeep Singh ("defendant") possessed with the intent to distribute approximately 506 kilograms of methamphetamine in the back of a U-Haul that he abandoned after a witness saw him loading duffel bags from another vehicle into the U-Haul and called 911. After the pretrial motions deadline has passed and after months of possessing the relevant discovery, defendant now moves On August 1, 2024, to dismiss the indictment, arguing that defendant's due process rights have been violated because the generic duffel bags that he was seen handling and that he used to transport half a ton of methamphetamine were not preserved as evidence and because "the government destroyed all the drugs." (Mot. at 1.)[1]

The Court should deny this motion. The generic duffel bags that defendant used to transport his half-ton of methamphetamine are not exculpatory (and in fact are incriminating), they did not have any apparent evidentiary value when they were destroyed, and there are comparable alternatives the defense could use at trial, should it so wish. Nor has defendant met his burden to show that Fontana Police Department acted in bad faith when they disposed of the generic duffle bags.

As to the drugs and the internal packaging, contrary to the defendant's accusation, the government did not destroy it "all." Pursuant to the Drug Enforcement Agency ("DEA") standard bulk-drug policies, the DEA weighed, tested, and examined the drugs and then

---

[1] Defendant's motion was filed a day after this Court's standing order requires pre-trial motions, aside from motions in limine, to be filed, despite the facts of this motion being developed since February 2024. (Standing Order at 6).

preserved an amount that is two times greater than the highest charging threshold under U.S. law. The DEA also set aside 30 of the internal bags (Ziplock bags and cellophane wrapping) for fingerprint analysis. Per its standard operating procedures, the DEA then destroyed the rest of the drugs because the DEA cannot house exorbitant quantities of narcotics emblematic of drug trafficking operations throughout the United States, like the one in this case. The 503 kilograms of methamphetamine that were destroyed are not exculpatory (and are in fact highly incriminating), the defense has a comparable sample (the 3 kilograms and packaging that have been retained for trial), and the defense cannot show that the government acted in bad faith when following standard procedures for bulk-drug destruction. Accordingly, his motion should be denied.

**II.  STATEMENT OF FACTS**

At approximately 1:08 p.m. on July 26, 2023, an employee at the Logan's Roadhouse restaurant in Fontana, California called 911 to report that two men had just loaded a U-Haul with bags of suspected methamphetamine. Fontana Police Department officers arrived minutes later and found the U-Haul in the parking lot right outside the restaurant. The back of the U-Haul cargo van contained twelve generic duffel bags filled with bundles of a white crystalline substance that law enforcement later tested and determined to be methamphetamine.

Fontana police officers photographed all 12 duffel bags before unloading them, then photographed them again after unloading them, then separated the bundles of methamphetamine from the duffel bags, photographed the methamphetamine, and turned all of the methamphetamine over to the DEA for further testing. (See Declaration of Lisa J. Lindhorst ("Lindhorst Decl."), Exhibit A (photographs).).

4

Fontana Police did not retain the generic duffel bags after separating the narcotics.

Within days, law enforcement identified defendant as the driver of the U-Haul that the 911 callers personally saw loading the U-Haul with duffel bags containing methamphetamine. Defendant was indicted on August 22, 2023, on one count of possessing methamphetamine with the intent to distribute it. The DEA arrested him in November 2023, at which time he waived his Miranda rights and spoke with Special Agent Trenton Shaffer. During that recorded interview, defendant admitted to renting, driving and loading the U-Haul, but claimed that he thought the duffel bags contained "truck parts," not methamphetamine.

In January 2024, the DEA laboratory completed its examination of the 506 kilograms of methamphetamine in accordance with DEA's bulk-testing policies. (Lindhorst Decl. ¶ 2.) Through this examination, DEA determined that there was a total of 212 bundles of crystalline substance. (See Lindhorst Decl., Ex. B-1 (chemist's report).) Some of the 212 bundles were in large quart-size Ziplock bags, others were wrapped in plastic/cellophane of two different colors. (Id.); see also Lindhorst Decl., Ex. B-2 (chemist's full redacted report).) The total estimated net weight of the methamphetamine was 506 kilograms (1,113 pounds). (Ex. B-1.) After this comprehensive testing, and pursuant to DEA policy, the DEA retained 3 kilograms of the methamphetamine (twice the amount for the highest charging threshold in the United States) and destroyed the rest. (Lindhorst Decl. ¶ 2; Ex. B-2.)

Defendant is on bond pending trial, which is scheduled for September 16, 2024.

### III. LEGAL STANDARD

Law enforcement officers have no obligation to retain evidence that does not appear to be exculpatory. California v. Trombetta, 467 U.S. 479 (1984). With respect to material exculpatory evidence, a "due process violation occurs whenever such evidence is withheld." Illinois v. Fisher, 540 U.S. 544, 547 (2004). But the "Supreme Court applies a different test if there is a 'failure of the State to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant.'" United States v. Del Toro-Barboza, 673 F.3d 1136, 1149 (9th Cir. 2012) (citation omitted).

Rather, in that scenario, which is the case here, "the failure to preserve this 'potentially useful evidence' does not violate due process 'unless a criminal defendant can show bad faith on the part of the police.'" Fisher, 540 U.S. at 547; see also, e.g., United States v. Renteria, 839 F. App'x 123, 125 (9th Cir. 2020) ("Although the Government may have been negligent in allowing Renteria's car to be repossessed, Renteria did not meet his burden to demonstrate that the Government knew of the car's potential usefulness at the time when it allowed the car to be repossessed."). United States v. Sepulveda, 15 F.3d 1161, 1195 (1st Cir. 1993) ("Government destruction of potentially exculpatory evidence only violates the rule in Brady if the evidence possesses apparent exculpatory value that cannot fully be replicated through other sources, and if the government acts willfully or in bad faith in failing to preserve it.").

To warrant his requested relief of dismissal based on a due process violation for the purported failure to preserve potentially

6

useful evidence, defendant bears the burden to show <u>all</u> three of the following:(1) that the exculpatory value of the evidence was apparent before the evidence was lost or destroyed;(2) the nature of the evidence was such that he would be unable to obtain comparable evidence by other reasonably available means; and (3) the government agents acted in bad faith in losing or destroying the evidence. See <u>Trombetta</u>, 467 U.S. at 488-489; <u>Arizona v. Youngblood</u>, 488 U.S. 51, 58 (1988); <u>United States v. Lord</u>, 711 F.2d 887, 891 n.3 (9th Cir. 1983) (burden of proof for constitutional or due process violation is on the defendant). As explained below, defendant cannot meet his burden on <u>any</u> of those three elements.

Courts may offer lesser sanctions, such an adverse inference instruction even in the absence of government bad faith, but "only when the quality of the government's conduct was poor and the prejudice to the defendant was significant." <u>United States v. John</u>, 683 F. App'x 589, 593 (9th Cir. 2017). While the government "bears the burden of justifying its conduct" it is the defendant who bears the burden of demonstrating prejudice. <u>United States v. Sivilla</u>, 714 F.3d 1168, 1173 (9th Cir. 2013). As explained below, no sanction is warranted here and the defendant cannot demonstrate any prejudice.

**IV.   THE COURT SHOULD DENY DEFENDANT'S MOTION**

Defendant claims that the government's failure to preserve generic duffel bags, 503 kilograms of methamphetamine, and packaging material merits dismissal. Not so. As a threshold matter, this evidence was inculpatory -- not exculpatory. The defense thus has not and cannot establish that the <u>exculpatory</u> value of the duffle bags, drugs, or packaging was apparent before these items were not preserved or destroyed. Nor can the defense establish that there is

no comparable evidence available -- surveillance footage, eyewitness testimony, officer testimony, and photographs all demonstrate that is not the case. And the defense cannot establish that law enforcement acted in bad faith. Finally, no lesser sanction is warranted.  The Court should therefore deny defendant's motion.

>     **A.   Defendant's Speculation that Generic Duffel Bags, the Half Ton of Confirmed Methamphetamine, and Packaging Would Have Been Material, Exculpatory Evidence is Not Enough**

The government is required to preserve evidence only if it "possessed an exculpatory value that was 'apparent' before the evidence was 'destroyed.'" United States v. Martinez-Martinez, 369 F.3d 1076, 1087 (9th Cir. 2004). Defendant's mere speculation that destroyed evidence would have proven exculpatory if retained is insufficient under Youngblood to sustain any of his requested relief. Id. ("[T]he fact that the evidence may have proven exculpatory — it very well may have inculpated [the defendant] further — does not render it per s 'material.'"). The "duty to preserve evidence is limited to material evidence, i.e., evidence whose exculpatory value was apparent before its destruction . . . ." Grisby v. Blodgett, 130 F.3d 365, 371 (9th Cir. 1997); see also Trombetta, 467 U.S. at 489-90 (original breath samples in DUI cases might have conceivably contributed to defense, but chances were low that preserved samples would have been exculpatory); United States v. Drake, 543 F.3d 1080, 1090 (9th Cir. 2008) (The "exculpatory value of an item of evidence is not 'apparent' when the evidence merely 'could have' exculpated the defendant," because it was also possible that the recording "would have further incriminated" the defendant.).

Defendant cannot meet these standards. Fontana Police Department officers did not retain as evidence the 12 generic duffel bags that

contained the methamphetamine. Instead, officers at the scene retained the internal packaging that contained the methamphetamine and the methamphetamine itself.

Defendant claims that the duffle bags, the packaging, and the drugs were material and exculpatory because this evidence would show that defendant reasonably believed the bags contained "innocuous contents," which is material to his defense. (Mot. at 3.) Even taken as true, that is not enough under Youngblood to establish a violation. That the duffle bags "could have" exculpated defendant" is insufficient for relief because it is also possible that the duffle bags would have "further incriminated him." Drake, 543 F.3d at 1090; Crawford v. Foulk, 2016 WL 4120613, at *9 (E.D. Cal. Aug. 1, 2016) ("[T]he mere possibility that examination of the [missing] videotape may possibly have revealed exculpatory evidence is simply not enough to satisfy the Trombetta standards."); United States v. Hendrix, 2019 WL 6879605, at *3 (W.D. Wash. Dec. 17, 2019)("Mere speculation regarding the exculpatory value of evidence is not sufficient to establish that the evidence is exculpatory."). Moreover, defendant fails to show that anyone knew the duffle bags containing incriminating evidence had any apparent exculpatory value at the time they were disposed of.

As to the plastic packaging and remaining half-ton of methamphetamine that was destroyed pursuant to standard DEA policy, the defense again tries to articulate an argument for how that evidence could be potentially exculpatory but fails to mention that the government has preserved and intends to introduce at trial the remaining 3 kilograms of methamphetamine in its original packaging -- an introduction that the defense in fact indicated during a meet and

9

1 confer it would oppose on the grounds that the drugs themselves would
2 be unduly prejudicial and cumulative to the photographs. The DEA
3 preserved these three kilograms of methamphetamine so that the
4 defense, the government, or the Court and jury could see up close
5 what he drugs looked and felt like.

6     Defendant nonetheless claims that he could have tested the
7 remaining methamphetamine and packaging for DNA. (Mot. at 4-5.) But
8 just because testing the drugs and packaging "could have" exonerated
9 defendant, it is also possible that doing so would have further
10 incriminated defendant. As a result, this reason is not a basis for
11 relief. See Drake, 543 F.3d at 1090. Nor is it true that the defense
12 was "denied the opportunity to offer this evidence" of whether
13 defendant touched or opened the bags (Mot. at 4). The DEA has
14 preserved approximately 30 of the internal bags, none of which the
15 defense has yet sought to test despite having months to conduct this
16 testing.[2] Nor is any of this material. Further, the narrative that
17 both sides have advanced throughout this case is that the defendant
18 touched the *outside* of the duffel bags when he transported the drugs
19 -- not that he at any point touched or packaged the drugs inside the
20 duffel bags, which the government is not required to prove to show
21 that defendant knowingly possessed methamphetamine or was
22 deliberately ignorant of the contents of the duffle bags.

23     Thus, defendant has failed to meet this factor and his motion
24 should be denied on this basis alone.

---

[2] The government did examine the internal bags for potential ridge detail for fingerprint comparisons and the result of that testing was that there were no usable prints for comparison. The government produced that information to the defense in discovery. In addition, the government has made these bags available for DNA testing as well.

10

**B.   Comparable Evidence Is Available**

Defendant likewise fails to show that he is "unable to obtain comparable evidence by other reasonably available means." Trombetta, 467 U.S. at 489. Trombetta does not require that the alternative evidence be an exact substitute for that which is lost; it only requires that the substitute evidence be "comparable." Id. Comparable or substitute evidence may be of poorer quality than the lost or destroyed evidence. See id. at 490; see also Drake, 543 F.3d at 1089-90 (finding "comparable evidence was plainly available" because "officers were available to testify to the contents of the recording" that was destroyed).

There is comparable evidence here. To begin, officers can testify about the duffel bags and the contents, which the Ninth Circuit has squarely held is comparable evidence in Drake. In addition, there is video footage of the officers moving the bags, and there are photographs that not only show the generic duffle bags and the packaging materials, but that also show the duffle bags are, for example, "opaque" and "mak[e] it impossible to see the contents inside" -- supporting the very defense defendant seeks to make in this case. (Mot. at 3.)

Moreover, the generic duffel bags filled with methamphetamine can easily be replicated, as can Ziplock bags and saran wrap. In fact, the government has proposed such a replica for trial in a forthcoming motion in limine.[3] Defense quibbles with the idea of a replica not being identical to what was destroyed (Mot. at 6-7), but Trombetta only requires "comparable" evidence, not identical. Plus,

---

[3] The brand and make of the duffle bags found in the U-Haul are readily apparent from the photographs and available online.

11

1 the defense could make use of the government's replica as a
2 demonstrative for its theory of the case, including that defendant
3 believed the 1,100 pounds of methamphetamine that he moved was truck
4 parts.

5     Similarly, there is <u>direct evidence</u> of the methamphetamine that
6 was destroyed, much less comparable evidence. Specifically, there is
7 3 kilograms of methamphetamine and 30 bags that were *preserved* and
8 that the defense is seeking to exclude. Moreover, witnesses, who will
9 be subject to cross-examination, will testify that the
10 methamphetamine was consistent in appearance, as photographs show and
11 as law enforcement and/or chemists noted when examining it. The DEA
12 retained a representative sample, which allows the defense, the
13 prosecution, and the jury to see up close the methamphetamine's
14 texture and overall appearance.  This sample also allows either party
15 to more accurately recreate the texture and feel of the
16 methamphetamine for demonstrative purposes (i.e., to feel the texture
17 through a duffel bag and assess the believability of defendant's
18 theory).

19     Thus, even if the generic packaging and the remaining half-ton
20 of methamphetamine constituted potentially exculpatory evidence that
21 the government destroyed (a premise defendant has far from
22 established since this evidence is inculpatory), there is comparable,
23 substitute evidence to establish the very point the defense is trying
24 to make at trial. The reason the defense seeks to prevent the
25 government from replicating this generic packaging is because
26 allowing the jury to see and feel what the defendant felt (or
27 anything remotely close to it) would be far more inculpatory than
28 exculpatory -- it would reveal that when the defendant tossed and

12

manipulated these fabric duffel bags, as a witness saw him do before calling 9111, he could tell that they did not contain "truck parts."

Accordingly, defendant fails to show there is no comparable evidence, and the Court can deny this motion on that basis alone.

**C.     Defendant Has Not Made the Requisite Showing of Bad Faith**

Even assuming, *arguendo*, that the government destroyed potentially exculpatory evidence for which there is no comparable substitute (which it did not), the Court should still dismiss defendant's motion as he fails to demonstrate that the government acted in bad faith. The Supreme Court has held that "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." Youngblood, 488 U.S. at 58.

Here, an employee at Logan's Roadhouse called 911 and informed the dispatcher that two men -- the defendant and his accomplice -- had left a U-Haul filled with duffel bags containing drugs in the parking lot. Officer Padilla responded to the call, retrieved the duffel bags filled with drugs from the open U-Haul, photographed them, and then had the bags transported to the station for processing. Once at the station, Fontana Police Department Officers separated the narcotics from the duffel bags and then booked only the narcotics.  They, of course, did not know at the time that three months later the defendant would offer the unlikely defense that while moving the duffel bags, he was under the impression the bags contained truck parts.

Ultimately, defendant has failed to establish that Officer Padilla or any of the officers at Fontana Police Department acted in bad faith. That the Fontana Police Department did not preserve body-

13

worn camera footage of this evidence recovery is a red herring and unrelated to the issue the defendant raises, which is about the texture of the bags. The footage would have shown the officers moving the duffel bags, and the government has footage from Logan's Roadhouse showing the officers doing just that, as well photographs of the bags before and after they were moved. Thus, defendant has not met his burden to show that the Fontana Police Department acted with animus towards the defendant or acted with any intention to destroy or suppress information that they knew would advance a defense. See, e.g., Trombetta, 467 U.S. at 479 (faulting defendants for their failure to show evidence of "official animus towards [the defendants]" or "a conscious effort to suppress exculpatory evidence"); Featherstone v. Estelle, 948 F.2d 1497, 1505 (9th Cir. 1989) (finding no evidence of bad faith when photo from photo lineup was destroyed, but it was "clear that [the destruction] was not deliberately done to deprive petitioner of access to relevant evidence").

    The same is true regarding the DEA who took custody of the drugs from Fontana Police Department after they disposed of the bags. There is no bad faith where evidence is not preserved due to standard procedures or policies. See, e.g., United States v. Guerrero-Hidrogo, 710 F. App'x 774, 775 (9th Cir. 2018) (no bad faith because routine overwriting of video every sixty days was not a product of "official animus" or of a "conscious effort to suppress exculpatory evidence"); United States v. LeGrande, 379 F. App'x 600, 601 (9th Cir. 2010) (same, where video was "overwritten in accordance with prison policy" and defendant "presented no evidence that the footage was deliberately destroyed in order to further the government's case");

United States v. Estrada, 453 F.3d 1208, 1212-13 (9th Cir. 2006) (no bad faith absent the government's "malicious intent"); United States v. Barton, 995 F.2d 931, 936 (9th Cir. 1993) (no bad faith where nothing suggested officers deliberately destroyed evidence for tactical gain); United States v. Heffington, 952 F.2d 275, 281 (9th Cir. 1991) (holding that governmental compliance with "departmental procedure" supports finding that the government did not act in bad faith) (internal quotation marks omitted); United States v. Hernandez, 109 F.3d 1450, 1455 (9th Cir. 1997) (no bad faith where officer destroyed gun pursuant to department procedures); United States v. Stallworth, 656 F.3d 721, 731 (7th Cir. 2011) (no bad faith were there may be an "innocent explanation" for missing materials, including that deletion was "a routine part of video record maintenance").

Accordingly, defendant fails to show the government acted in bad faith, and the Court can deny this motion on that basis alone.

### D. Sanctions Are Not Warranted

In addition to his failure to establish any of the elements of a due process violation, defendant has also failed to show that the government's conduct here warrants any sanctions at all – let alone one so drastic as dismissing the indictment. See United States v. Kearns, 5 F.3d 1251, 1254 (9th Cir. 1993); United States v. Morrison, 449 U.S. 361, 364-365 (1981) (sanctions should be tailored to remedy constitutional violation without unnecessarily infringing on competing interests). Indeed, defendant belies his own argument by requesting exclusion of the remaining portion of the methamphetamine and packaging (that he now claims he needed to present his theory of

the case) and requesting suppression of the government's proposed replica.

"The rule governing sanctions for lost or destroyed evidence is found in the controlling concurrence in United States v. Loud Hawk, 628 F.2d 1139 (9th Cir. 1979) (en banc) (Kennedy, J., concurring), reversed on other grounds in United States v. W.R. Grace, 526 F.3d 499, 506 (9th Cir. 2008). In Loud Hawk, the Supreme Court instructs courts to assess whether the balance between "the quality of the Government's conduct and the degree of prejudice to the accused" weighs in favor of the defendant. 628 F.2d at 1152. The government bears the burden of justifying its conduct, while the defendant bears the burden of demonstrating prejudice. Id.

To make this assessment, courts consider (1) whether the evidence was lost or destroyed while in the government's custody; (2) whether the government acted in disregard of the defendant's interests; (3) whether the government was negligent; (4) whether the prosecuting attorneys were involved; and (5) if the acts were deliberate, whether they were taken in good faith or with reasonable justification. Robertson, 895 F.3d at 1213 (finding government acted reasonable when video in government's custody was "automatically recorded over" because exculpatory value was not apparent).

Here, the government's conduct was within the "general range of reasonableness." Robertson, 895 F.3d at 1213. As an initial matter, the government did not act in disregard of defendant's interest: officers did not know the duffel bags had any apparent exculpatory value at the time they were disposed of, and the DEA acted pursuant to its policies and *preserved* a portion of the drugs and internal

16

packaging that remains available to defendant. Nor was the government negligent: again, the duty to preserve evidence is limited to *material* evidence whose exculpatory value was apparent *before its destruction*. Neither the duffle bags, the drugs, nor the packaging meet this exacting standard.  Further, none of the prosecuting attorneys were involved, and law enforcement took each step in good faith and with reasonable justification. Under the totality of circumstances, as described in Robertson, no lesser sanction is warranted. 895 F.3d at 1213 (finding government acted reasonable when video in government's custody was "automatically recorded over" because exculpatory value was not apparent).

As for prejudice to defendants, courts "consider the centrality and importance of the lost evidence to the case, the probative value and reliability of secondary or substitute evidence, the nature and probable weight of inferences and kinds of proof lost to the accused, and the probable effect on the jury from the absence of the evidence." Robertson, 895 F.3d at 1214. To argue prejudice, defendant cites United States v. Sivilla, attempting to draw a similarity by arguing that the government's actions here were poor and the prejudice to defendant high, but the comparison is wholly inapposite. 714 F.3d 1168 (9th Cir. 2013). In Sivilla, the defendant was entitled to a remedial jury instruction upon a balancing of the quality of the government's conduct against the degree of prejudice to the defendant. Id. at 1173. The Court first found that the government acted poorly by promising to protect the evidence but failed to take any affirmative steps and indeed participated in events leading to the evidence's destruction. Id.

Here, by contrast, the government made no such promises, and indeed, was not even aware of the relevance of the generic duffel bags when they were discarded, and the government was following standard DEA protocol when it destroyed the remaining methamphetamine and packaging beyond the 3 kilograms retained for trial. And the government certainly was not on notice that the defendant would seek to preserve any of these materials.

Additionally, in Sivilla, the Court found that prejudice to the defendant was high because (1) the case involved drugs found in compartments in the defendant's vehicle, and (2) the destroyed evidence consisted of the vehicle defendant sought to examine to rebut the prosecution's arguments that he knew the drugs were there. Id. at 1174. The ability to examine the vehicle or photos thereof was *central* to the defendant's ability to mount his only conceivable defense. Id. The purported prejudice in the instant case does not come close to such a degree. Here, as discussed above, duffel bags had marginally relevant value, particularly when compared with the actual bags of drugs, a portion of which have been *preserved*. And the half-ton of methamphetamine that was destroyed would have been cumulative to the three kilograms that was also *preserved*. If anything, these materials, had they been preserved, would have been *far* more helpful to the government than the defense.

Ultimately, defendant can raise his concerns before the jury by cross-examining government witnesses and arguing these facts to the jury during closing statements. He should not receive an adverse jury instruction when he has not met the exacting standards he is required to meet for such relief.

**V.   CONCLUSION**

For all these reasons, the government respectfully requests that the Court deny defendant's motion.

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record, the United States Attorney for the Central District of California, certifies that this brief contains 4,322 words, which complies with the word limit of L.R. 11-6.1.

DATED: August 15, 2024

_____
LISA J. LINDHORST
COLIN SCOTT

Assistant United States Attorney
Attorneys for Plaintiff
UNITED STATES OF AMERICA